IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NATIONWIDE PROPERTY AND CASUALTY INSURANCE COMPANY | : CIVIL ACTION : : |
| v. | : NO. 20-4082 : |
| GANI ISMAKOVIC, *et al.* | : |

## MEMORANDUM

**KEARNEY, J.**                                                                                         **March 31, 2021**

A man began working five days a week delivering packages on a fee-per-delivery basis for a messenger service at the beginning of the pandemic. He drove his mom's Subaru for this gig job. On April 20 of last year, he collided his mom's car into a motorcycle after completing all of his deliveries for the day. The motorcycle driver sued his parents and him as well as the messenger service. The parents' car insurer declined coverage saying the family agreed to exclude coverage for an insured car while it is being used on a regular basis for a delivery service. The insurer sued asking we declare it need not offer coverage and the parties now cross-move for summary judgment. The family argues the accident occurred after the son completed his deliveries for the day and thus not while he was using the car for a delivery service. The insurer counters the family did not pay for coverage for a car used on a regular basis for a delivery service and the policy plainly excludes accidents involving cars while being used on a regular basis to make deliveries with examples such as newspaper and pizza delivery services. Interpreting the insurance policy as a contract, we today grant the insurer's motion for summary judgment, finding the family agreed to preclude coverage for an accident involving a car being used on a regular basis to deliver packages regardless of whether the driver finished his deliveries when the accident occurred.

## I.     Undisputed material facts[1]

Gani Ismakovic began working as an independent contractor delivering packages five days a week for Route Messengers of Pennsylvania at the outset of the pandemic in February 2020.[2] Route Messengers provided "delivery services, including pick up, transporting and delivery of letters, parcels, packages and other items on behalf of its clients."[3] Gani lived with his parents and drove his mom's Subaru car to deliver packages.[4] Gani and his parents are insureds under an automobile insurance policy his parents purchased from Nationwide Property and Casualty Insurance Company.[5]

After completing his assigned deliveries on April 20, 2020, Gani collided his mom's Subaru with a motorcycle.[6] The driver of the motorcycle allegedly sustained serious injuries and sued Mr. and Mrs. Ismakovic, Gani, and Route Messengers in state court.[7]

The issue today is whether Nationwide must defend the Ismakovics in the state court suit. The Ismakovics chose and paid for liability coverage providing Nationwide will:

> . . . pay damages for "bodily injury" or "property damage" for which any "insured" becomes legally responsible because of an auto accident. Damages include prejudgment interest on covered damages awarded against the "insured" which do not exceed our limit of liability for this coverage. We will settle or defend, as we consider appropriate, any claim or suit asking for these damages. In addition to our limit of liability, we will pay all defense costs we incur. Our duty to settle or defend ends when our limit of liability for this coverage has been exhausted by payment of judgments or settlements unless required by law. We have no duty to defend any suit or settle any claim for "bodily injury" or "property damage" not covered under this policy.[8]

The Ismakovics chose and paid for a policy including what is commonly known as a "car for hire" or "use for hire" exclusion. They agreed Nationwide "do[es] not provide Liability Coverage for any 'insured': . . . ."

> 5. For that "insured's" liability arising out of the ownership or operation of a vehicle while it is being used:

2

a. To carry persons or property for a fee or compensation. This includes but is not limited to any period of time a vehicle is being used by any "insured" who is logged into a "transportation network platform" as a driver, whether or not a passenger is "occupying" the vehicle; or

b. On a regular basis for retail or wholesale delivery, including but not limited to pizza, magazine, newspaper and mail delivery.

Exclusion A.5.a. does not apply to vehicles used in shared-expense car pools or while the vehicle is used in the course of volunteer work for a tax-exempt organization. [9]

### *Gani's daily role with Route Messengers.*

Gani and Route Messengers signed an Independent Contractor Agreement on February 12, 2020.[10] Route Messengers paid Gani for each delivery he made and picked-up, including a twenty dollar-per-day fee for "Return to base at end of day with all pick-ups."[11] Gani did not receive a salary; Route Messengers paid him per delivery and pick-up. Gani delivered payroll and medical supplies for Route Messengers five days a week.[12]

Route Messengers did not require Gani to report to its distribution warehouse at a set time, but he usually arrived at the warehouse by 8:00 a.m.[13] Once at the warehouse, Gani picked up "pre-determined packages and payrolls in [his] pile" for delivery.[14] Using an app on his personal phone, Gani received a manifest of his deliveries for the day from a Route Messengers' device and scanned each delivery into his phone.[15] Gani made as few as ten and as many as eighty deliveries a day depending on the season. He estimated he made on average thirty to forty deliveries a day for Route Messengers in April 2020.[16] He occasionally picked up items and returned them to the Route Messengers' warehouse.[17]

Gani testified to his practice of returning to the warehouse after he made his last delivery of the day to drop off the empty "basket" – described as a "big tub" – kept in his car to hold his

various deliveries for the day.[18] Route Messengers did not require Gani to clock out, check a computer, or scan his phone when he returned to the warehouse.[19]

Gani believed Route Messengers required him to return the basket to the warehouse.[20] He preferred to return the basket because it took up room in his car and, because he does not live in "the best neighborhood," he did not want anyone to break into his mom's car to get to the basket.[21] Gani later testified he learned Route Messengers did not require him to return the basket after his last delivery; he returned the basket of his "free will"; and "once you're done – your pickups or drop-offs are done, that's it. There's no punch-in, clock out."[22] He testified to his understanding he is "done" and could go home or wherever else he wanted to go once he completed his deliveries or pick-ups for the day.[23]

There is no dispute Gani completed all deliveries at the time of the accident. His accident with the motorcycle occurred while driving to the Route Messengers' warehouse to drop off his basket.[24] It is undisputed Gani did not have pick-ups to bring back to the warehouse.[25]

## II. Analysis

Nationwide seeks a determination of its rights and obligations under the Policy. Nationwide contends the unambiguous "car for hire" exclusion in the Policy precludes coverage for Gani's accident.[26] The Ismakovics contend the exclusion does not preclude coverage because at the time of the accident Gani did not use his mom's car to carry property for a fee or compensation or to make deliveries. The Ismakovics alternatively argue the exclusion is ambiguous as it is subject to more than one reasonable interpretation applying to the Ismakovics' use the vehicle at any time or during one of the excluded uses. The parties cross-moved for summary judgment.[27]

4

A.      **Nationwide's "car for hire" exclusion.**

The Ismakovics chose and paid for a car insurance policy which did not provide them coverage for "liability arising out of the ownership or operation of a vehicle *while it is being used*: a. *To carry persons or property for a fee or compensation.* . . . ; *or* b. *on a regular basis for retail or wholesale delivery*, including but not limited to pizza, magazine, newspaper and mail delivery."[28] A "car for hire" exclusion in automobile insurance policies "den[ies] coverage for damages arising out of the insured's ownership or operation of a vehicle while it is being used to carry persons or property for a fee, or similar language."[29] Coverage disputes over the applicability of such "car for hire" exclusions often arise in accidents involving pizza delivery drivers.[30] The case law developed around the exclusion "often focus[es] on the meaning of the terms 'used' and 'fee,' or similar forms of the latter, in deciding those circumstances which are included within the intent of the exclusion."[31] Pennsylvania courts and our Court of Appeals applying Pennsylvania law have enforced a "car for hire" exclusion where applicable depending on policy language and facts of the case.[32]

B.      **We interpret insurance policies as contracts under Pennsylvania law.**

We interpret an insurance contract as a question of law.[33] "Ordinarily in insurance coverage disputes an insured bears the initial burden to make a prima facie showing that a claim falls within the policy's grant of coverage, but if the insured meets that burden, the insurer then bears the burden of demonstrating that a policy exclusion excuses the insurer from providing coverage if the insurer contends that it does."[34] "Where an insurer seeks to disclaim coverage on the basis of a policy exclusion . . . the insurer bears the burden of proving the applicability of the exclusion as an affirmative defense."[35] Under Pennsylvania law, policy exclusions are strictly construed against the insurer and in favor of the insured.[36]

5

The language of the policy "must be the 'polestar' of our inquiry."[37] We must enforce the plain language of the insurance contract where its terms are clear and unambiguous.[38] Under Pennsylvania law, "[w]hen the policy language is clear and unambiguous, we will give effect to the language of the contract."[39] We do not read out words of an unambiguous policy.[40] We give clear and unambiguous language "its 'plain and ordinary meaning' and the 'court must give effect to every word that can be given effect.'"[41] "Pennsylvania's rules of construction do not permit words in a contract to be treated as surplusage . . . if any reasonable meaning consistent with the other parts can be given to it."[42] If we are "'forced to choose between two competing interpretations of an insurance policy, we are bound, as a matter of law, to choose the interpretation which allows us to give effect to all of the policy's language.'"[43]

Where an insurance contract provision is ambiguous "in the context of the entire agreement, the questionable provision must be construed in favor of the insured."[44] Policy language is ambiguous "where the language of the contract is 'reasonably susceptible of different constructions and capable of being understood in more than one sense.'"[45] The determination of a contract's ambiguity is performed by the court and is a question of law "properly resolved on a motion for summary judgment."[46]

With these principles in mind, we turn to whether Nationwide's "car for hire" exclusion applies to Gani's accident relieving Nationwide of its duty to defend the Ismakovics in the underlying state action.

### C. The Policy's unambiguous language excludes coverage for Gani's accident.

The Policy's unambiguous language excludes coverage for "liability arising out of the ownership or operation of a vehicle while it is being used" under two circumstances: (a) when the insured uses the vehicle "[t]o carry persons or property for a fee or compensation . . ." or (b) when

6

the insured uses the vehicle "on a regular basis for retail or wholesale delivery, including but not limited to pizza, magazine, newspaper and mail delivery."[47] The phrase "while it is being used" applies to subsection (a) <u>and</u> to subsection (b) and the exclusion applies where the insured uses the vehicle as proscribed by subsection (a) <u>or</u> subsection (b).

Despite the use of the disjunctive "or" in the exclusion, the parties conflate subsections (a) and (b) spending much of their briefing arguing whether Gani:received a "fee or compensation" when returning his basket to Route Messengers' warehouse at the time of the accident; returned the basket voluntarily; thought Route Messengers required him to return the basket, and, returning his basket is like the "round trip" of a pizza delivery driver. These are interesting questions of increasingly important concerns in a gig economy with undeveloped Pennsylvania law under subsection (a) relating to coverage for accidents involving persons being paid a fee to drive persons or property and whether accidents after the driver completes the job should be covered. But we need not determine whether subsection (a) applies to Gani's accident because the unambiguous language of subsection (b) excludes coverage.

There is no dispute Gani began working as an independent contractor making deliveries for Route Messengers beginning in February 2020. There is no dispute he used his mom's Subaru to make anywhere from ten to eighty deliveries a day, depending on the season, five days a week for at least two months before the April 20, 2020 accident. It is abundantly clear Gani used his mom's car "on a regular basis" for deliveries, day in and day out, week after week. Once Gani began using his mom's car on a regular basis to make deliveries, the exclusion triggered: Nationwide will not provide coverage for liability arising out of the ownership or operation of a vehicle while it is being used on a regular basis for delivery. The Ismakovics did not choose, and

7

Nationwide did not insure, for the risk of Gani's use "on a regular basis" of his mom's Subaru as a delivery car.

The Ismakovics argue the exclusion is ambiguous because it is subject to more than one reasonable interpretation: it could apply to preclude coverage when "(1) the insured is involved in an accident *while operating the vehicle while* carrying persons for a fee or compensation or while engaged in activities constituting retail or wholesale delivery; or (2) the insured's vehicle involved in the accident is used to carry persons or property for a fee or compensation, or is used for retail or wholesale delivery, *at any time*."[48]

But this exclusion is not ambiguous; this is what the language of the exclusion provides. If we were to accept the Ismakovics' argument, the exclusion applies only where liability arises from the operation of the insured vehicle "while it is being used" — at the moment of the accident — to carry persons or property for a fee or compensation (subsection (a)) or while making a delivery (subsection (b)). The argument equates use of a vehicle "on a regular basis for retail or wholesale delivery" with "carry[ing] persons or property for a fee or compensation." If this were correct, when would subsection (b) ever apply? Under Pennsylvania's rules of contract construction, words in a contract are not permitted "to be treated as surplusage . . . if any reasonable meaning consistent with the other parts can be given to it."[49]

Giving effect to its plain language, the exclusion applies here because at the time of the accident on April 20, 2020, Gani used his mom's car to make deliveries "on a regular basis" of five days a week for over two months leading up to the accident. We enter judgment in favor of Nationwide.

8

### III. Conclusion

We grant Nationwide's Motion for summary judgment and deny the Ismakovics' Motion for summary judgment.

---

[1] Our Policies require a Statement of Undisputed Material Facts ("SUMF") and an appendix in support of summary judgment. On all cross-motions for summary judgment under Rule 56, the cross-movants must consult before filing to prepare a joint appendix. We require all pages to be consecutively Bates stamped and referenced in the motions and briefs by the Bates number assigned each page. The parties failed to do so here; they each filed their own appendix which are identical except for an additional document included in Nationwide's appendix. As there appears to be no dispute over the contents of the appendix, we will cite the appendix submitted by Nationwide but remind counsel to read and comply with the Court's Policies and Procedures consistent with our November 19, 2020 Order. ECF Doc. No. 11.

Nationwide filed its Motion and brief in support for summary judgment at ECF Doc. No. 20; Statement of Undisputed Material Fact ("SUMF") at ECF Doc. No. 21; and Appendix at ECF Doc. No. 20-1. The Ismakovics responded by re-filing their affirmative Motion for summary judgment. *See* ECF Doc. No. 24.

The Ismakovics filed their Motion and brief in support of summary judgment at ECF Doc. No. 22; SUMF at ECF Doc. No. 22-1; and appendix at ECF Doc. No. 22-2. Nationwide responded to the Ismakovics' motion at ECF Doc. No. 23, but chose not to respond to the Ismakovics' SUMF.

Each party filed a SUMF. Nationwide's SUMF contains forty-six paragraphs (ECF Doc. No. 21); the Ismakovics' SUMF contains forty-four paragraphs (ECF Doc. No. 22-1). The first twenty-two paragraphs of the parties' SUMF are identical. After paragraph 22, each party's SUMF differs. Neither party responded to the other party's SUMF and, lacking any response, assume all facts asserted by the parties are undisputed.

[2] ECF Doc. No. 21, SUMF ¶¶ 11, 17. 20.

[3] ECF Doc. No. 20-1, Appendix 250a.

[4] ECF Doc. No. 21, SUMF ¶¶ 5, 10, 16; ECF Doc. No. 1 ¶ 12; ECF Doc. No. 10 ¶ 12.

[5] ECF Doc. No. 21, SUMF ¶ 2.

[6] ECF Doc. No. 21, SUMF ¶¶ 4, 5; Appendix 7a, ¶¶ 21-26.

[7] ECF Doc. No. 21, SUMF ¶ 4; Appendix 256a.

[8] ECF Doc. No. 21, SUMF ¶ 6.

9

[9] *Id.* ¶ 7.

[10] Appendix 250a.

[11] Appendix 254a.

[12] ECF Doc. No. 21, SUMF ¶¶ 18, 19, 20.

[13] ECF Doc. No. 21, SUMF ¶ 21; Appendix 115a.

[14] Appendix 115a.

[15] *Id.* at 115a-116a.

[16] ECF Doc. No. 21, ¶ 22; Appendix 115a.

[17] Appendix 116a-117a.

[18] *Id.* at 117a.

[19] *Id.*

[20] *Id.*

[21] *Id.*; ECF Doc. No. 21, SUMF ¶¶ 28-29.

[22] Appendix 126a-127a.

[23] *Id.* at 126a.

[24] ECF Doc. No. 21, SUMF ¶¶ 25, 39; ECF Doc. No. 22-1, SUMF ¶¶ 27-28.

[25] ECF Doc. No. 21, SUMF ¶ 43; ECF Doc. No. 22-1, SUMF ¶ 35.

[26] Nationwide asserts the car for hire exclusion is unambiguous. ECF Doc. No. 23.

[27]  Summary judgment is proper when "the movant shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). "Material facts are those 'that could affect the outcome' of the proceeding, and 'a dispute about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury to return a verdict for the non-moving party.'" *Pearson v. Prison Health Serv.,* 850 F.3d 526, 534 (3d Cir. 2017) (quoting *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011)). On a motion for summary judgment, "we view the facts and draw all reasonable inferences in the light most favorable to the nonmovant." *Pearson*, 850 F.3d at 533-34 (3d Cir. 2017) (citing *Scott v. Harris*, 550 U.S. 372, 378 (2007)). "The party seeking summary judgment 'has the burden of demonstrating that the

evidentiary record presents no genuine issue of material fact.'" *Parkell v. Danberg*, 833 F.3d 313, 323 (3d Cir. 2016) (quoting *Willis v. UPMC Children's Hosp. of Pittsburgh*, 808 F.3d 638, 643 (3d Cir. 2015)). If the movant carries its burden, "the nonmoving party must identify facts in the record that would enable them to make a sufficient showing on essential elements of their case for which they have the burden of proof." *Willis*, 808 F.3d at 643 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "If, after adequate time for discovery, the nonmoving party has not met its burden, pursuant to Federal Rule of Civil Procedure 56, the court must enter summary judgment against the nonmoving party." *Willis*, 808 F.3d at 643 (citing *Celotex Corp.*, 477 U.S. at 322-323).

"This standard does not change when the issue is presented in the context of cross-motions for summary judgment." *Auto-Owners Ins. Co. v. Stevens & Ricci Inc.*, 835 F.3d 388, 402 (3d Cir. 2016) (quoting *Appelmans v. City of Phila.*, 826 F.2d 214, 216 (3d Cir. 1987)). "When both parties move for summary judgment, '[t]he court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard.'" *Auto-Owners Ins. Co.*, 835 F.3d at 402 (quoting 10A Charles Alan Wright et al., FEDERAL PRACTICE & PROCEDURE § 2720 (3d ed. 2016)).

[28] ECF Doc. No. 21, SUMF ¶ 7 (emphasis added).

[29] Randy J. Sutton, Annotation, *What Constitutes Use of Automobile "To Carry Persons or Property for Fee" Within Exclusion of Automobile Insurance Policy*, 57 A.L.R. 5th 591 (1998).

[30] *Id.*

[31] *Id.* at § 2.

[32] *See Prudential Prop. and Cas. Ins. Co. v. Sartno*, 903 A.2d 1170 (Pa. 2006); *Brosovic v. Nationwide Mut. Ins. Co.*, 841 A.2d 1071 (Pa. Super. Ct. 2004); *Powell v. Walker*, 630 A.2d 16 (Pa. Super. Ct. 1993); *Ratush v. Nationwide Mut. Ins. Co.*, 619 A.2d 733 (Pa. Super. Ct. 1992); *Nationwide Mut. Ins. Co. v. Brophy*, 371 F. App'x 302 (3d Cir. 2010).

[33] *Am. Auto. Ins. Co. v. Murray*, 658 F.3d 311, 320 (3d Cir. 2011) (citing *Melrose Hotel Co. v. St. Paul Fire & Marine Ins. Co.*, 432 F. Supp. 2d 488, 495 (E.D. Pa. 2006)).

[34] *State Farm Fire & Cas. Co. v. Estate of Mehlman*, 589 F.3d 105, 111 (3d Cir. 2009) (citing *Koppers Co. v. Aetna Cas. and Sur. Co.*, 98 F.3d 1440, 1446 (3d Cir. 1996)).

[35] *Gen. Refractories Co. v. First State Ins. Co*, 855 F.3d 152, 158 (3d Cir. 2017) (citing *Madison Constr. Co. v. Harleysville Mut. Ins. Co.*, 735 A.2d 100, 106 (Pa. 1999)).

[36] *Nautilus Ins. Co. v. Motel Mgmt. Servs., Inc.*, 320 F. Supp. 3d 636, 639 (E.D. Pa. 2018) (citing *QBE Ins. Corp. v. Walters*, 148 A.3d 785, 788 (Pa. Super. Ct. 2016)), *aff'd* 781 F. App'x 57 (3d Cir. 2019).

[37] *Gen. Refractories Co.*, 885 F.3d at 158 (quoting *Madison Constr. Co.*, 735 A.2d at 106).

---

[38] *Fry v. Phoenix Ins. Co.,* 54 F. Supp.3d 354, 362 (E.D. Pa. 2014) (citing *Reliance Ins. Co. v. Moessner*, 121 F.3d 895, 900–901 (3d Cir. 1997)).

[39] *Allstate Prop. and Cas. Ins. Co. v. Squires*, 667 F.3d 388, 391 (3d Cir. 2012) (quoting *Paylor v. Hartford Ins. Co.*, 640 A.2d 1234, 1235 (Pa. 1994)).

[40] *See e.g. Frank Van's Auto Tag, LLC v. Selective Ins. Co. of the Se.*, No. 20-2740, 2021 WL 289547, at *5 (E.D. Pa. Jan. 28, 2021) (declining to "read[] out operative language from the terms of coverage").

[41] *Travelers Home and Marine Ins. Co. v. Stahley*, 239 F. Supp. 3d 866, 870–71 (E.D. Pa. 2017) (quoting *Allstate Ins. Co. v. Lombardi*, 142 F. App'x 549, 550 (3d Cir. 2005) and *Mut. Benefit Ins. Co. v. Politsopoulos*, 115 A.3d 844, 853 (Pa. 2015)).

[42] *Gen. Refractories Co. v. First State Ins. Co.*, 94 F. Supp. 3d 649, 661 (E.D. Pa. 2015) (quoting *Clarke v. MMG Ins. Co.*, 100 A.3d 271, 276 (Pa. Super. Ct. 2014)).

[43] *Id.*

[44] *Id.* (citing *Devcon Int'l Corp. v. Reliance Ins. Co.*, 609 F.3d 214, 218 (3d Cir. 2010)).

[45] *Gen. Refractories Co.*, 885 F.3d at 159 (quoting *Madison Constr. Co.*, 735 A.2d at 106).

[46] *Fry*, 54 F. Supp. 3d at 262 (citing *401 Fourth Street, Inc. v. Investors Ins. Gp.*, 879 A.2d 166, 171 (Pa. 2005) and *Harleysville Ins. Co. v. Aetna Cas. & Sur. Ins. Co.*, 795 A.2d 383, 385 (Pa. 2002)).

[47] ECF Doc. No. 21, SUMF ¶ 7 (emphasis added).

[48] ECF Doc. No. 23 at 8-9 (emphasis added).

[49] *See infra* n. 42.